1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN D. AMANT,

11            Plaintiff,                    No. CIV S-09-0935 DAD

12        vs.

13   MICHAEL J. ASTRUE,              <u>ORDER</u>
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is denied, defendant's cross-

19   motion is granted, and the decision of the Commissioner of Social Security (Commissioner) is

20   affirmed.

21                         **PROCEDURAL BACKGROUND**

22            On February 27, 2004, plaintiff filed applications for Disability Insurance Benefits

23   (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income

24   (SSI) under Title XVI, alleging disability beginning on February 3, 2004.  (Transcript (Tr.) at 74-

25   76, 90-96, 373-77.)  The applications were denied initially in May 2004 and upon reconsideration

26   in August 2004.  (Tr. at 57-58, 66-71, 378-84.)  A hearing was held before Administrative Law

1  Judge (ALJ) Antonio Acevedo-Torres in June 2005.  (Tr. at 31-56, 72.)  Plaintiff was represented

2  by counsel and testified at the hearing.  (Tr. at 31-56.)  In a decision issued on July 15, 2005, the

3  ALJ found that plaintiff was not entitled to DIB or SSI benefits.  (Tr. at 12-21.)  After the

4  Appeals Council denied plaintiff's request for review in September 2006 (tr. at 4-6, 8), plaintiff

5  sought judicial review by filing case No. CIV S-06-2659 CMK (E.D. Cal.).  By stipulated order

6  filed August 14, 2007, the case was remanded for further proceedings.  (Tr. at 421-22.)  The

7  court's order required the Appeals Council to remand the case to the ALJ with instructions to (1)

8  further evaluate the May 25, 2005 opinion of treating physician Alexander Chen, M.D., (2)

9  further evaluate the credibility of plaintiff's subjective complaints pursuant to Social Security

10 Ruling (SSR) 96-7p and apply SSR 06-03p to the third-party statements of Deborah Saienni, and

11 (3) obtain testimony from a vocational expert (VE) regarding the effect of any medically

12 determined nonexertional impairment on plaintiff's occupational base.  (Tr. at 421-22.)  The

13 Appeals Council remanded the case to the ALJ by order dated October 4, 2007.  (Tr. at 427-28.)

14         On January 3, 2008, a remand hearing was held before ALJ Stanley R. Hogg.  (Tr.

15 at 691-727.)  Plaintiff was represented by counsel and testified at the hearing, as did a VE.  (Tr.

16 at 691-92.)  In a decision issued on June 19, 2008, the ALJ found that plaintiff had not been

17 under a disability from February 2, 2004 through the date of the decision.  (Tr. at 401-11.)  The

18 ALJ entered the following findings:

19         1.  The claimant meets the insured status requirements of the
           Social Security Act through June 30, 2009.
20
           2.  The claimant has not engaged in substantial gainful activity
21         since February 2, 2004, the alleged onset date (20 CFR
           404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
22
           3.  The claimant has the following severe impairments: plantar
23         fasciitis, obesity and a learning disorder (20 CFR 404.1520(c) and
           416.920(c)).
24
           4.  The claimant does not have an impairment or combination of
25         impairments that meets or medically equals one of the listed
           impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
26 /////

                                          2

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the exertional demands of work as follows: lift and/or carry 20 pounds occasionally; stand and/or walk for up to 4 hours in an 8-hour workday; and can sit for up to 6 hours in an 8-hour workday. The undersigned further finds that the claimant retains the following residual functional capacity to perform the mental demands of work: moderate limitations dealing with people; moderate limitations concentrating; is unable to work with supervisors, coworkers or the public on more than occasional basis; should not deal with the public on a frequent basis; and limitations in concentrating would preclude complex work but no low semi-skilled or unskilled work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 16, 1971 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 403-10.)

On February 6, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's June 19, 2008 decision. (Tr. at 389-96.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 6, 2009.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.

4

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff argues that the ALJ committed four principal errors in finding him not disabled:  (1) the ALJ failed to further evaluate the 2005 opinion of Dr. Chen as required by the remand order, failed to properly evaluate and credit Dr. Chen's 2008 opinion, and failed to discuss or even refer to Dr. Collins' 2004 psychiatric assessment; (2) the ALJ failed to properly evaluate the third-party statements of Deborah Saienni as required by the remand order; (3) the ALJ failed to properly assess the impact of plaintiff's obesity as required by law; and (4) the ALJ failed to pose legally adequate hypothetical questions to the VE and failed to ask the VE whether her testimony was consistent with the DOT.  Each of plaintiff's arguments is addressed below.

## I.  **Evaluation and Crediting of Medical Evidence**

Plaintiff's first argument concerns the ALJ's treatment of the medical opinions proffered by treating physician Dr. Chen in 2005 and 2008 and the medical opinion proffered by examining psychiatrist Dr. Collins in 2004.

1    The weight to be given to medical opinions in Social Security disability cases

2    depends in part on whether the opinions are proffered by treating, examining, or nonexamining

3    health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

4    "As a general rule, more weight should be given to the opinion of a treating source than to the

5    opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because

6    a treating doctor is employed to cure and usually has a greater opportunity to know and observe

7    the patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v.

8    Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

9    A treating physician's uncontradicted opinion may be rejected only for clear and

10   convincing reasons, while a treating physician's opinion that is controverted by another doctor

11   may be rejected only for specific and legitimate reasons supported by substantial evidence in the

12   record.  Lester, 81 F.3d at 830-31.  An ALJ who rejects a treating physician's opinion must

13   articulate valid reasons that are "based on substantial evidence in the record" and meet the

14   appropriate standard.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).   The ALJ need

15   not give weight to a conclusory opinion supported by minimal clinical findings.  Meanel v.

16   Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's

17   "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and

18   providing no basis for finding the claimant disabled); see also Magallanes, 881 F.2d at 751.

19   "The opinion of an examining physician is, in turn, entitled to greater weight than

20   the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

21   uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing

22   reasons, and when an examining physician's opinion is controverted by another doctor's opinion,

23   the examining physician's opinion may be rejected only for specific and legitimate reasons

24   supported by substantial evidence in the record.  Id. at 830-31.  "The opinion of a nonexamining

25   physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

26   of either an examining physician *or* a treating physician."  Id. at 831 (emphasis in original).

1        The ALJ may meet his burden of setting forth valid reasons for rejecting a treating

2   physician's medical opinion by "setting out a detailed and thorough summary of the facts and

3   conflicting clinical evidence, stating his interpretation thereof, and making findings."

4   Magallanes, 881 F.2d at 751.  An ALJ may validly reject a treating physician's medical opinion

5   that is inconsistent with the physician's own treatment records and lacks support by objective

6   evidence.  Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Batson v. Comm'r of

7   Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  An ALJ may also validly reject

8   contradictory medical opinions offered by the same treating physician, Johnson v. Shalala, 60

9   F.3d 1428, 1433 (9th Cir. 1995), and a treating physician's medical opinion that is inconsistent

10   with the claimant's testimony, Andrews v. Shalala, 53 F.3d 1035, 1042-43 (9th Cir. 1995).

11   Although an ALJ is required to explain why he or she has rejected uncontroverted medical

12   evidence, the ALJ "can resolve disputes in contradicted medical evidence."  Sanchez v. Sec'y of

13   HHS, 812 F.2d 509, 511 (9th Cir. 1987).  The ALJ "is the final arbiter with respect to resolving

14   ambiguities in the medical evidence," Tommasetti, 533 F.3d at 1041, and indeed it is the ALJ's

15   duty to resolve conflicts in such evidence and determine which medical opinions to credit,

16   Sanchez, 812 F.2d at 511.

17      **A.**    **Dr. Chen's Opinions**

18        Alexander Chen, M.D., appears to have seen plaintiff for the first time on August

19   19, 2003, when plaintiff requested a drug detox referral.  (Tr. at 243-44.)  Dr. Chen had treated

20   plaintiff for a year and three-quarters when he completed a form titled "Medical Assessment of

21   Ability to Do Work-Related Activities (Physical)" on May 25, 2005.[1]  (Tr. at 369-72.)  Dr. Chen

22   completed a second "Medical Assessment of Ability to Do Work-Related Activities (Physical)"

23

---

24   [1] Treatment records reflect that Dr. Chen was designated plaintiff's "supervising M.D." and primary care physician, but plaintiff was seen by other Sutter Health doctors for emergency or urgent care or on referral by Dr. Chen.  (See tr. at 239-42 [8/25/03 Dr. Muller]; tr. at 238

25   [12/4/03 Dr. King]; tr. at 236-37 [11/17/03 Dr. Sijan]; tr. at 235 [12/16/03 Dr. King]; tr. at 233-34 [1/22/04 Dr. Nguyen].)  Dr. Chen saw plaintiff approximately a month before the completion

26   date on the 2005 medical assessment form.  (Tr. at 688-89.)

1  form on January 9, 2008, after treating plaintiff for more than four years.  (Tr. at 627-30.)

2  On the 2005 assessment form, Dr. Chen's principle diagnosis was bilateral plantar

3  fasciitis, with secondary diagnoses of peripheral neuropathic pain and cavus feet.  (Tr. at 369.)

4  By checking boxes on the form, Dr. Chen indicated as follows:  plaintiff's ability to walk, stand,

5  or sit was affected by his impairments; during an eight-hour workday, plaintiff could be expected

6  to tolerate walking and/or standing for up to 4 hours maximum per day and sitting for up to 2

7  hours without interruption; plaintiff's ability to lift or carry objects was not affected by his

8  impairments; plaintiff could lift or carry up to 20 pounds frequently, and up to and over 50

9  pounds occasionally; plaintiff was not restricted in bending but was totally restricted in climbing

10  stairs and ladders and would require rest periods during the day.  (Tr. at 369-70.)  In response to a

11  form question about any emotional problem or mental dysfunction, Dr. Chen noted forgetfulness

12  "at times" and panic disorder.  (Tr. at 370.)  The only prescribed medication noted by Dr. Chen

13  was Vicodin, with constipation a possible side effect experienced by plaintiff.  (Id.)  In response

14  to the form question about plaintiff's ability to perform "at least the full range of sedentary work"

15  as described on an attachment to the form, i.e., sitting for at least 6 hours in an 8-hour workday,

16  Dr. Chen indicated that plaintiff was not able to perform such work because plaintiff had been

17  seen by a podiatrist and was "felt to not be able to perform work as described" on the form.  (Id.)

18  Dr. Chen indicated that plaintiff was not able to work an eight-hour day five days per week

19  because he "[h]as painful condition which prevents ability to work."  (Tr. at 371.)  Dr. Chen

20  indicated that plaintiff experiences pain due to his impairments, estimating that plaintiff

21  experienced pain at a level of "10 out of 10."  (Id.)  Dr. Chen found plaintiff's reports of pain

22  credible on the ground that there was "[n]o other reason for him to have symptoms described."

23  (Id.)  Dr. Chen did not expect improvement in plaintiff's condition because he felt the condition

24  was permanent.  He noted, however, that plaintiff "has special orthotic shoes that will help with

25  his condition."  (Id.)  From the seven categories of residual functional capacity (RFC) described

26  in the attachment to the form, Dr. Chen selected Category G as the one that most appropriately

1    applied to plaintiff.  (Id.)  Category G is titled "Less than the full range of sedentary" and

2    includes persons who are unable to do prolonged sitting and persons who can work as long as

3    they may alternate sitting and standing but cannot sit for at least 6 hours of an 8-hour workday,

4    which is a requirement for performing the full range of sedentary work.  (Tr. at 372.)

5             On the 2008 assessment form, Dr. Chen assessed a principle diagnosis of cavus

6    feet, with secondary diagnoses of plantar fasciitis and mechanical capsulitis/neuritis in the right

7    foot.  (Tr. at 627.)  Dr. Chen checked boxes indicating that plaintiff's ability to walk, stand, or sit

8    was affected by his impairments; during an eight-hour workday, plaintiff could be expected to

9    tolerate walking and/or standing for a total of one to two hours without interruption and sitting

10   for a total of one to two hours without interruption; plaintiff's ability to lift or carry objects was

11   also affected by his impairments because it "[h]urts to lift or carry heavy objects"; plaintiff could

12   lift and/or carry amounts up to 20 pounds occasionally but could never lift and/or carry more than

13   20 pounds; plaintiff was not restricted from climbing stairs or ladders or from bending or

14   stooping but would require rest periods during the day.  (Tr. at 627-28.)  In response to the form

15   question about any emotional problem or mental dysfunction, Dr. Chen again noted occasional

16   forgetfulness but did not mention panic disorder.  (Tr. at 628.)  The only prescription medication

17   indicated by Dr. Chen was Simvastatin, with no side effects experienced by plaintiff.  (Id.)  In

18   response to the form question about plaintiff's ability to perform "at least the full range of

19   sedentary work" as described on the attachment to the form, i.e., sitting for at least 6 hours in an

20   8-hour workday, Dr. Chen indicated that plaintiff is capable of performing such work but then

21   noted that plaintiff "only can do list on G," the category that describes persons who are restricted

22   to performing less than the full range of sedentary work.  (Id.)  Dr. Chen then opined that plaintiff

23   was not able to work an eight-hour day five days per week because he "[h]as pain, decreased

24   stamina" and "[h]as to elevate feet to relieve pain."  (Tr. at 629.)  Dr. Chen stated that plaintiff

25   experiences pain due to his impairments and estimated his level of pain to be "6 out of 10 in

26   severity."  (Id.)  Dr. Chen found plaintiff's reports of pain credible because he "[s]eems to be

trustworthy/honest." (Id.)  Dr. Chen did not expect improvement in plaintiff's condition because

he "[h]as not improved in over 3 years." (Id.)  Of the seven categories of residual functional

capacity described in the attachment to the form, Dr. Chen again selected Category G, "Less than

the full range of sedentary," as the category of residual functional capacity that most

appropriately applied to plaintiff.  (Id.)  As noted above, Category G includes persons who are

unable to do prolonged sitting and persons who can work as long as they may alternate sitting

and standing but cannot sit for at least 6 hours of an 8-hour workday, which is required for

performing the full range of sedentary work.

Plaintiff cites the stipulated remand order filed in Case No. CIV S-06-2659 CMK,

as well as the Appeals Council's own order implementing the court's order, and argues that the

ALJ on remand failed to further evaluate Dr. Chen's 2005 opinion and failed to properly evaluate

and credit Dr. Chen's 2008 opinion.

With respect to Dr. Chen's 2005 opinion, plaintiff contends that the ALJ merely

mentioned it in the course of discrediting the doctor's 2008 opinion but did not otherwise

evaluate the 2005 opinion at all, thereby ignoring Dr. Chen's opinions in 2005 that plaintiff could

sit for only a maximum of two hours without interruption, would require rest periods during the

day, suffered from forgetfulness at times, had a panic disorder, was incapable of working an 8-

hour day five days a week due to his painful condition, was not capable of performing the full

range of sedentary work, asserted credible reports of pain, and suffered from a permanent

condition that would not improve.  Plaintiff asserts that the ALJ failed to explain what weight, if

any, he accorded to the 2005 RFC assessment, despite the court's "very specific remand order,"

and tacitly rejected the assessment without discussion and without articulating any reason for

doing so.  (Pl.'s Mot. for Summ. J. (Doc. No. 22) at 26-27.)

With respect to Dr. Chen's 2008 opinion, plaintiff complains that the ALJ rejected

that opinion in its entirety despite the fact that Dr. Chen had by then been treating plaintiff for

almost four years.  Plaintiff acknowledges that the ALJ identified the following grounds for

1   rejecting the 2008 opinion:  it was not supported by the treatment records, it was inconsistent

2   with the 2005 report; it was inconsistent with plaintiff's testimony that he did not have any

3   problems sitting; and it belied common sense to say a claimant can sit 1 to 2 hours at one time

4   and at the same time say a claimant can sit for a maximum of 1 to 2 hours in an 8 hour day.

5   Plaintiff contends that the ALJ improperly cobbled together his own RFC assessment instead of

6   crediting Dr. Chen's assessments.

7          Defendant argues that the ALJ provided valid reasons for rejecting Dr. Chen's

8   opinions when he noted that those opinions were not supported by treatment records and were

9   inconsistent with each other and with plaintiff's own testimony.  (See tr. at 407-08.)  The court

10  agrees.  The following analysis by the ALJ demonstrates that the ALJ considered Dr. Chen's

11  opinions and rejected them in part:

12         In support of his allegations of severe chronic foot pain and
           significant functional limitations, the claimant cites a medical
13         source statement issued by his treating physician on January 9,
           2008.  (Exhibit 22F, pages 2 through 5 [tr. at 627-30]).  The
14         claimant's physician stated that plantar fasciitis and mechanical
           capsulitist [sic] /neuritis of the right foot limited the claimant to
15         walking and/or standing for 1 to 2 hours in an 8-hour workday;
           sitting for only 1 to 2 hours and limits him to performing a less
16         than sedentary level of work.  The undersigned is unable to fully
           credit the allegations made by the claimant's physician as they are
17         not supported by any of the claimant's treatment records with this
           physician.  Nor are they fully supported by statements made earlier
18         in 2005 by the same physician who opined then that the claimant
           retained the capacity to walk and/or stand for 4 hours in an 8-hour
19         workday and could frequently lift and/or carry up to 20 pounds and
           over 50 pounds on an occasional basis.  (Exhibit 7F [tr. at 369-
20         72]).  Nor is there any evidence in the record showing the claimant
           alleging to his treating physician that he had limitations in his
21         ability to sit.  Further, it belies common sense to say a claimant can
           sit 1 to 2 hours at one time and at the same time saying maximum
22         sitting of 1 to 2 hours in an 8 hour day.  Indeed, the claimant
           testified he has no problems sitting.
23
           A medical source statement issued on December 5, 2006 by a
24         physician who performed an internal medicine examination of the
           claimant is more consistent with the record when considered in its
25         entirety.  (Exhibit 11F [tr. at 488-93]).  The physician stated that
           claimant can lift and/or carry 25 pounds frequently and 50 pounds
26         occasionally; stand and/or walk for 6 hours in an 8-hour workday;

                                           11

sit for 6 hours in an 8-hour workday and periodically alternate between standing and/or sitting every 2 hours.  (Exhibit 11F, page 5 [tr. at 492]).  While the undersigned does not fully credit the functional limitations expressed by an examining physician in a medical source statement issued on August 6, 2007, they lessen the veracity of the claimant's alleged functional limitations where the physician stated that the claimant has no functional limitations.  (Exhibit 18F, page 5 [tr. at 571]).

(Tr. at 407-08.)

In addition to finding that the ALJ's gave valid reasons for declining to fully credit Dr. Chen's opinions, the court finds that the ALJ's analysis demonstrates adequate compliance with the district court's remand order requiring the ALJ to "[f]urther evaluate Dr. Chen's May 25, 2005 opinion" and with the Appeals Council's order to "[g]ive further consideration to the treating source opinion," "explain the weight given to such opinion evidence," and, as appropriate, "request the treating source to provide additional evidence and/or further clarification of the opinion."  (Tr. at 421, 427.)

**B.      Dr. Collins' Opinion**

Rodney Collins, M.D., performed a comprehensive psychiatric evaluation of plaintiff on April 25, 2004.  Dr. Collins' functional assessment was as follows:

The claimant is actively using amphetamines and I do not feel that he is a good candidate to manage funds in his best behalf.  He would need a payee to help manage funds in his best interest.  He also has some deficits of memory, calculations and concentration on mental status evaluation which would again substantiate him needing help in managing funds in his best behalf.  I do feel that this claimant could perform simple and repetitive tasks in a work setting; however, more detailed and complex tasks might be beyond him at this time.  He would have difficulty accepting and remembering instructions from supervisors, interacting with coworkers and/or the public on a regular basis.  The claimant can maintain regular attendance in a workplace and complete a normal workday and workweek without interruptions.  I do feel that the usual stresses that are encountered in competitive work might overwhelm him.  I do not feel in light of his current circumstances that he could perform work activities consistently.

(Tr. at 207.)

Plaintiff argues that the ALJ erred in failing to even reference Dr. Collins' 2004 psychiatric assessment. Plaintiff cites Dr. Collins' opinions that plaintiff (1) suffers from a chronic learning disability that is unlikely to improve, (2) could perform simple and repetitive tasks in a work setting but more detailed and complex tasks might be beyond him, (3) would have difficulty accepting and remembering instructions from supervisors and interacting with coworkers and/or the public on a regular basis, (4) might be overwhelmed by the usual stresses encountered in competitive work, and (5) could not perform work activities consistently. (Tr. at 207.) Plaintiff contends that the ALJ's failure to mention these opinions constituted a tacit rejection of them without providing specific and legitimate reasons for the rejection.

Defendant argues that the ALJ credited other substantial evidence over Dr. Collins' opinions, which relied on plaintiff's drug use as a basis for the limitations cited by plaintiff. Defendant argues further that Dr. Collins' opinions conflicted with the opinions of examining psychiatrist Shohreh Ghaemian, M.D., who performed a comprehensive psychiatric evaluation of plaintiff on December 3, 2006, and the opinions of Rosemary Tyl, M.D., and Susan Regan, M.D., the non-examining state agency psychiatrists who rendered opinions bases on record review on May 20, 2004 and August 2, 2004, respectively.

It is evident that Dr. Collins did indeed rely on plaintiff's drug use in assessing his functional limitations. Dr. Collins noted plaintiff's daily use of methamphetamine in the family and social history section as well as the alcohol and drug abuse history section of the evaluation. Dr. Collins also included plaintiff's drug use in the DSM-IV diagnosis as active amphetamine abuse, and plaintiff's drug use figured prominently in his functional assessment, as shown in the excerpt quoted above. (Tr. at 205-07.) Dr. Collins' opinion that more detailed and complex tasks might be beyond plaintiff "at this time" and his opinion that "in light of his current circumstances" plaintiff could not perform work activities consistently are obviously grounded on the effects of plaintiff's amphetamine abuse because Dr. Collins did not diagnose any other condition that would limit plaintiff's ability to perform more detailed and complex tasks "at this

1   time" and to perform work activities consistently "in light of his current circumstances."  (Tr. at

2   206-07.)

3          The ALJ explained his treatment of the testimony and medical evidence related to

4   plaintiff's mental residual functional capacity as follows:

> The claimant testified that he suffers from severe depression,
> anxiety around other people and an inability to read and/or learn.
> He testified that these symptoms limit his ability to perform the
> mental demands of work.  The undersigned is unable to fully credit
> the claimant's allegations.  The record shows the claimant suffers
> from a chronic learning disability, but there is no evidence showing
> that he has sought or received treatment for this or any other
> alleged mental impairment.  (Exhibits 1F [tr. at 204-07]; 10F [tr. at
> 483-87] and 22F [tr. at 625-90]).  Without consideration of his
> suffering from any type of drug abuse, an examining psychiatrist
> stated on December 3, 2006, that the claimant retained the capacity
> to perform simple, repetitive jobs on a regular basis; and that the
> only other limitation he has is performing detailed and complex
> jobs due to his lack of educational background and limited
> employment history.  (Exhibit 10F, page 4 [tr. at 486]).  The
> undersigned credits the opinions of this psychiatrist.
>
> Based on the above evidence, the undersigned has found that a
> chronic learning disability limits the claimant to performing the
> mental demands of low semi-skilled or unskilled work which
> prevents him from working around others on more than occasional
> basis.
>
> Taking the claimant's drug abuse into consideration along with his
> learning disability would result in a finding that the claimant was
> unable to perform the mental demands of work.  However, the drug
> abuse is now in substantial remission and is no longer material.
> Accordingly, the undersigned finds that the claimant's drug
> addiction is not material to a finding of disability.

20  (Tr. at 408.)  This analysis demonstrates that the ALJ did not fail to consider and reference Dr.

21  Collins' 2004 psychiatric assessment.  Specifically, that assessment was marked as Exhibit 1F at

22  the administrative hearing is cited by the ALJ as evidence – along with Dr. Ghaemian's 2006

23  psychiatric assessment and Dr. Chen's 2008 medical assessment and treatment records –

24  examined for the purpose of determining any functional limitations arising from plaintiff's

25  mental impairments.

26  /////

1      The court finds that the ALJ provided a legitimate reason for crediting Dr.

2 Ghaemian's 2006 assessment and rejecting Dr. Collins' 2004 assessment to the extent that the

3 latter was based on plaintiff's use of amphetamines.  Moreover, Dr. Collins' assessment was not

4 rejected in its entirety, as the ALJ included learning disability as one of plaintiff's severe

5 impairments and determined that plaintiff was limited to performing low semi-skilled or

6 unskilled work and could not work around others more than occasionally.

7      **C.**      **Conclusion**

8      The court finds that the ALJ on remand did not fail to evaluate or properly credit

9 the opinions of Dr. Chen and Dr. Collins.  Plaintiff is not entitled to summary judgment in his

10 favor with respect to this argument.

11 **II.  Third-Party Testimony**

12      The testimony of lay witnesses, including family members and friends, reflecting

13 their own observations of how the claimant's impairments affect his activities must be

14 considered and discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

15 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232.  Persons who see the claimant on a

16 daily basis are competent to testify as to their observations.  Regennitter v. Comm'r of Soc. Sec.

17 Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir.

18 1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must

19 give reasons germane to each particular witness.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d

20 at 919.  The mere fact that medical records do not corroborate the testimony does not provide a

21 proper basis for rejecting the testimony.  Smolen, 80 F.3d at 1289.  It is especially important for

22 the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms

23 not supported by medical evidence in the file and the third parties have knowledge of the

24 claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.

25      Questions of credibility and the resolution of conflicts in the testimony are usually

26 deemed functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  The determination of

15

1   credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  <u>Saelee</u>, 94

2   F.3d at 522.  As a general rule, an ALJ's assessment of credibility should be given great weight.

3   <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques of credibility

4   evaluation may be employed, and the adjudicator may take into account prior inconsistent

5   statements or a lack of candor by the witness.  <u>Fair</u>, 885 F.2d at 604 n.5.  Absent affirmative

6   evidence of malingering, however, the ALJ's reasons for rejecting the claimant's testimony must

7   be clear and convincing.  <u>Morgan</u>, 169 F.3d at 599.

8            Here, plaintiff asserts that the ALJ failed to properly evaluate the third-party

9   statements of Deborah Saienni as directed by the district court and the Appeals Council.  The

10  district court's order instructed the ALJ to apply SSR 06-3p to statements obtained from other

11  sources, such as the statement by Deborah Saienni, and the Appeals Council ordered the ALJ to

12  address the third-party opinion.  (Tr. at 422, 428.)  According to plaintiff, the ALJ erred in

13  making this single reference to the statements of Ms. Saienni:  "Just as the above evidence does

14  not fully support the claimant's allegations regarding the severity of his symptoms or the extent

15  of his functional limitations, it also does not support the allegations made by the claimant's

16  girlfriend on July 18, 2004."  (Tr. at 407.)  Plaintiff argues that Ms. Saienni's third-party

17  evidence provided information useful to understanding how plaintiff's impairments affected his

18  ability to work.  Defendant argues that the ALJ provided valid reasons for rejecting Ms. Saienni's

19  lay statements, finding them inconsistent with the medical evidence.

20           The court finds that plaintiff errs in reading the alleged one-sentence reference to

21  plaintiff's girlfriend so narrowly.  The statement is found near the end of the ALJ's five-page

22  detailed discussion of evidence supporting his findings with respect to plaintiff's RFC.  (Tr. at

23  404-08.)  The discussion commenced with the ALJ's statement that he considered all symptoms

24  and the extent to which those symptoms could reasonably be accepted as consistent with the

25  objective medical evidence and other evidence, including opinion evidence.  (Tr. at 404-05.)  The

26  ALJ's discussion continued with a summary of plaintiff's testimony, followed by references to

1   medical evidence that contradicts many of plaintiff's statements.  (Tr. at 405-07.)  After the ALJ

2   described several places in the record where plaintiff's veracity is called into question by

3   evidence that contradicts his testimony, the ALJ stated that, "[j]ust as the above evidence does

4   not fully support the claimant's allegations regarding the severity of his symptoms or the extent

5   of his functional limitations, it also does not support the allegations made by the claimant's girl

6   friend on July 18, 2004." (Tr. at 407.)  The statement must be considered in the context of the

7   ALJ's entire discussion of plaintiff's testimony and the evidence supporting or refuting it.

8           Ms. Saienni's third-party function report includes the following allegations:

9   plaintiff's daily activities from the time he wakes up until he goes to bed consist solely of moving

10  from the bed to the couch, where he watches TV; he can't work, take walks, or do everyday

11  chores; she helps him walk to the bathroom; he doesn't do any household chores indoors or

12  outdoors; he can't go out alone; he can only walk 6 steps before needing to rest; he can only pay

13  attention for a few minutes.  (Tr. at 139-44.)  Some of these extreme allegations are contradicted

14  by plaintiff's own testimony, while others are contradicted by medical evidence and opinions

15  discussed by the ALJ prior to his statement about the allegations of plaintiff's girl friend.

16          The court finds that the ALJ properly found Ms. Saienni's statements about the

17  severity of plaintiff's symptoms and the extent of his functional limitations unsupported by

18  evidence of record, including plaintiff's own testimony as well as medical evidence and medical

19  opinions.  The ALJ was permitted to consider the absence of supporting objective medical

20  evidence along with other factors.  Accordingly, plaintiff is not entitled to summary judgment in

21  his favor with respect to his claim that the ALJ rejected the testimony of plaintiff's girlfriend

22  without articulating legitimate reasons for doing so.

23  **III.  Assessing the Impact of Obesity**

24          Plaintiff argues next that the ALJ failed to properly assess the impact of his

25  obesity pursuant to SSR 02-01p, as required by law.  As plaintiff admits, the ALJ found that

26  plaintiff suffers from the severe impairment of obesity, noted plaintiff's history of suffering from

1    obesity, determined that the record did not contain allegations by plaintiff that his obesity by

2    itself limits his ability to function, and found that the record showed on occasion that obesity

3    intensified plaintiff's alleged bilateral foot pain.  (Tr. at 403, 406.)  Plaintiff appears to argue that

4    the ALJ should have inferred additional limitations arising from plaintiff's obesity.

5            SSR 02-1p directs adjudicators to consider the effects of obesity not only under

6    the listings but also when assessing a claim at other steps of the sequential evaluation process,

7    such as the assessment of an individual's RFC.  The Ruling explains how obesity may increase

8    the severity of related impairments, particularly musculoskeletal and respiratory impairments,

9    and explains how the effects of obesity should be evaluated.  An ALJ must evaluate the

10   additional impact of a claimant's obesity both singly and in combination with the claimant's

11   other impairments.

12           The court finds that the ALJ's statements concerning plaintiff's obesity

13   demonstrate compliance with SSR 02-01p, since the ALJ properly examined the record for

14   evidence of obesity as a severe impairment, evidence that plaintiff alleged limitations on his

15   ability to function caused by his obesity, and evidence that plaintiff's ability to function was in

16   fact limited due to his obesity, even if plaintiff had not so alleged.  The ALJ specifically

17   determined that the record shows that plaintiff's obesity sometimes intensified his foot pain, but

18   plainly did not find any evidence that the severity of plaintiff's impairments was increased by his

19   obesity such that additional limitations were required beyond those included in the ALJ's RFC

20   assessment.  In addition, the ALJ relied on medical opinions by treating and examining

21   physicians who were aware of plaintiff's obesity, as they recorded his weight, but did not opine

22   that plaintiff suffered any additional functional limitations as a result of his obesity.  Plaintiff has

23   not pointed to any evidence in the record establishing that his obesity caused limitations which

24   were not considered by the ALJ or that his obesity caused limitations greater than those

25   considered by the ALJ.

26   /////

1    Plaintiff's argument concerning the alleged failure to properly assess the impact of

2    his obesity pursuant to SSR 02-01p is unpersuasive.  The court finds no error in the ALJ's

3    assessment of the impact of obesity on the plaintiff in this case.  Accordingly, plaintiff is not

4    entitled to summary judgment with respect to this argument.

5    **IV.  Adequacy of the Hypothetical Questions and Consistency with the DOT**

6    Plaintiff argues that the ALJ failed to pose legally adequate hypothetical questions

7    to the vocational expert (VE) and failed to ask the VE whether her testimony was consistent with

8    the Dictionary of Occupational Titles (DOT).

9    **A.    Hypothetical Questions**

10   After careful consideration of plaintiff's argument that the ALJ failed to pose

11   legally adequate hypothetical questions, the court finds that the ALJ reasonably concluded that

12   plaintiff retains the RFC to lift and/or carry 20 pounds occasionally, stand and/or walk for up to 4

13   hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday, with moderate

14   limitations dealing with people and concentrating, such that plaintiff is limited to light-exertional

15   semi-skilled or unskilled work.  (See tr. at 404.)  All of the limitations supported by the record

16   were properly reflected in the hypothetical questions posed by the ALJ.  (See tr. at 717-25.)

17   To the extent that plaintiff's argument is grounded on the claims that the ALJ

18   should have assessed additional limitations pursuant to the opinions of Dr. Chen and Dr. Collins,

19   the argument lacks merit.  The court is unpersuaded by plaintiff's argument that the ALJ failed to

20   incorporate Dr. Ghaemian's opinion that plaintiff was limited to performing simple and repetitive

21   work because the ALJ's assessment of plaintiff's RFC provides that he is precluded from

22   performing complex work, but not "low semi-skilled or unskilled work."  (Tr. at 404.)  The ALJ

23   in fact included this limitation in his initial hypothetical question posed to the VE.  (Tr. at 718.)

24   Accordingly, plaintiff is not entitled to summary judgment in his favor with

25   respect to this claim because the ALJ's RFC determination was proper and the hypothetical

26   questions posed to the vocational expert were not deficient.  See Holohan v. Massanari, 246 F.3d

1195, 1208-09 (9th Cir. 2001) (ALJ is required to question a vocational expert in a manner that

properly takes into account the limitations on the plaintiff's abilities to engage in various work-

related functions).

### B.   Consistency with the DOT

The court has also considered plaintiff's argument that the ALJ failed to ask the

VE whether her testimony was consistent with the DOT.  An ALJ is required to inquire on the

record as to whether any testimony given by a VE is consistent with the DOT.  If there is a

conflict between the two, the ALJ must then resolve it by determining whether the VE's

explanation for the conflict is reasonable and justifies reliance on the expert's testimony rather

than on the DOT information.  SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The Ninth

Circuit has held that the ALJ may not rely on a vocational expert's testimony regarding the

requirements of a particular job without first inquiring whether the testimony conflicts with the

DOT.  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).[2]  However, failure to make the

requisite inquiry is harmless where there is no conflict or where the vocational expert's testimony

provides sufficient support to justify any potential conflict.  Id. at 1154 n.19.

Here, the ALJ failed to ask the VE on the record whether her testimony was

consistent with the DOT, but stated in his decision that the VE's testimony was consistent with

the information contained in the DOT.  (Tr. at 410.)  Plaintiff argues that the jobs identified by

the VE based on the ALJ's hypothetical questions were not consistent with the DOT because the

jobs include three – storage facility clerk, office helper, and mail room clerk – that conflict with

the ALJ's RFC assessment that plaintiff has moderate limitations dealing with people, has

moderate limitations in concentrating, and cannot work with supervisors, coworkers, or the

public except occasionally.  Plaintiff argues further that the three jobs in question require a

reasoning level that exceeds plaintiff's ability to perform simple, routine tasks.  As a result of

---

[2]  The second administrative hearing in this case was held on January 3, 2008.  The Ninth Circuit filed its decision in Massachi on May 11, 2007.

1  these alleged defects, plaintiff contends that the ALJ was not justified in relying on the VE's

2  testimony when he determined that jobs exist in significant numbers in the national economy that

3  plaintiff can perform.

4          Although plaintiff has cast his argument as one concerning inconsistency between

5  the VE's testimony and the DOT, there is no such inconsistency in this case.  Plaintiff's argument

6  really concerns whether the jobs selected by the VE are consistent with plaintiff's abilities.

7  However, plaintiff has misinterpreted the DOT numbering system with respect to the element of

8  dealing with people.  The three jobs at issue do not require more contact or communication with

9  people than would be appropriate for a person with plaintiff's limitations, as two of them require

10 only "speaking-signaling," which is defined as talking with and/or signaling people to convey or

11 exchange information, and the third requires "taking instructions/helping," which means that no

12 immediate response is required, unless clarification is needed.  (See Def.'t's Cross-Mot. for

13 Summ. J. (Doc. No. 23), Mem. at 13-14.)

14         The three jobs at issue require a reasoning level of 2 or 3 on a scale of 6.

15 Although plaintiff was educated in Special Education classes and did not continue past the ninth

16 grade, plaintiff has not demonstrated that levels 2 and 3 exceed the capacity of a person with the

17 RFC to perform unskilled and low semi-skilled work.[3]  In the absence of evidence that plaintiff's

18 reasoning skills fall below the DOT requirements for reasoning levels 2 and 3, the court does not

19 find that the mere fact of plaintiff's having a learning disability requires a conclusion that he is

20 unable to perform the jobs cited by the VE.

21 /////

22         [3]  The DOT uses a scale of six levels, with 6 being the highest, to describe the reasoning
23 development required for the job.  At reasoning level 3, the employee is required to "[a]pply
   commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic
24 form" and "[d]eal with problems involving several concrete variables in or from standardized
   situations."  At reasoning level 2, the employee is required to "[a]pply commonsense
25 understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with
   problems involving a few concrete variables in or from standardized situations."  DOT App. C
26 (4th ed. rev. 1991), 1991 WL 688702.

1    **C.     Conclusion**

2         Plaintiff is not entitled to summary judgment on his argument that the ALJ failed

3    to pose legally adequate hypothetical questions to the VE and failed to ask the VE whether her

4    testimony was consistent with the DOT.  The ALJ was justified in relying on the VE's testimony

5    when he determined that jobs exist in significant numbers in the national economy that plaintiff

6    can perform.  Accordingly, plaintiff is not entitled to summary judgment in his favor with respect

7    to this argument.

8    **CONCLUSION**

9         For the reasons set forth above, the court has determined that plaintiff is not

10   entitled to summary judgment in his favor with respect to any of his arguments.

11        Accordingly, IT IS HEREBY ORDERED that:

12        1.  Plaintiff's motion for summary judgment (Doc. No. 22) is denied;

13        2.  Defendant's cross-motion for summary judgment (Doc. No. 24) is granted; and

14        3.  The Commissioner's decision is affirmed.

15   DATED: January 7, 2011.

16

17   _____

18   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

19   DAD:kw
     Ddad1/orders.socsec/amant0935.order

20

21

22

23

24

25

26